# SCHEDULE K

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, : <br> : <br> Plaintiff, : <br> : <br> v. : <br> : <br> SIMING YANG, PRESTIGE TRADE : <br> INVESTMENTS LIMITED, CAIYIN FAN : <br> SHUI CHONG (ERIC) CHANG : <br> : <br> Defendants. : | Case No. 12-cv-02473 <br> Hon. Matthew F. Kennelly |

**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S
RESPONSE TO DEFENDANTS' PROPOSED JURY INSTRUCTIONS**

After receiving the SEC's proposed jury instructions, defendants proposed the alternative instructions addressed below.

**First**, defendants proposed a "Province of the Judge and Jury" instruction, taken from the Seventh Circuit model instructions, that reads: "Do not allow sympathy, prejudice, fear, or public opinion to influence you. You should not be influenced by any person's race, color, religion, national ancestry, or sex." Defendants have also proposed the inclusion of the following instruction, also from the Seventh Circuit model instructions: "In this case some of the parties are corporations. All parties are equal before the law. A corporation is entitled to the same fair considerations that you would give any individual person." The SEC agrees that these instructions are appropriate. Consequently, both instructions are included as "Preliminary Instruction No. 5" of the SEC's proposed instructions that are included in this final pretrial order.

**Second**, instead of the SEC's proposed substantive instruction for the insider trading claims, which is "Pre-Deliberation Instruction No. 24" in the SEC's proposed instructions, defendants have proposed five instructions: (1) an introductory instruction; (2) "Elements Insider Trading – Knowledge, Intent, and Willfulness"; (3) "Insider Trading: Breach of the Duty"; (4) "Elements – Insider Trading: Material"; and (5) "Elements Inside Trading – Non-Public."

For the following reasons, the SEC objects to these instructions, and requests that its proposed instruction for the insider trading claims – Pre-Deliberation Instruction No. 24 – be adopted instead:

Defendants' make repeated references throughout their instructions to Rules 10b5-1 and 10b5-2, even though neither Rule is at issue in this case. As the Complaint makes clear, the SEC alleges that Defendants "directly or indirectly, violated, and unless enjoined will again violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]." (*See, e.g.*, Am. Compl. ¶ 114, ECF No. 124.) Reference to either 10b5-1 or 10b5-2 is unnecessary and inappropriate, and would only confuse and mislead the jury.

Defendants' instructions are disjointed – apparently repeating several elements, intimating sub-elements, repeatedly mentioning SEC rules that do not apply (such as Rule 10b5-1 and Rule 10b5-2), and unnecessarily reciting the entirety of Rule 10b-5 itself, thus risking the possibility that the jurors will consider such language to be additional elements, rather than redundant.

Defendants' instructions inaccurately recite the definition of scienter as "knowingly, willfully and with intent to defraud." Defendants have omitted a critical component of

scienter—recklessness. As the Seventh Circuit, severely reckless behavior is sufficient for civil liability under Section 10(b) and Rule 10b-5 thereunder. *See SEC v. Lyttle*, 538 F.3d 601, 603 (7th Cir. 2008). Similarly, Defendants improperly attempt to insert a "good faith" component as some sort of supplement to intent, going so far as to argue that the SEC must prove both their scienter and their lack of good faith. This is both inaccurate – ignoring as it does the fact that liability can flow from a defendant's severe recklessness – and is needlessly confusing.

In addition to the foregoing, Defendants inaccurately argue that the SEC must prove that defendants acted with the requisite scienter for virtually each and every element of an insider trading claim. That's not the law. Rather, the SEC need only prove that "defendants, while in knowing possession of the material non-public information, and with knowledge that the information had been improperly obtained through a breach of a duty to maintain confidentiality of such information, used such information by intentionally or with severe recklessness, traded the stock or options of Zhongpin, Inc. for their own benefit." (*See* SEC's Instruction 24.)

Defendants' instruction on breach of duty is also misleading. Defendants proposed instructions states that "[t]here is no violation of the securities laws for trading while in possession of material, non-public information." In fact, defendants do violate the law "when the disclosure of that information is improper and the [individual] knows or should know that this is case." *SEC v. Michel*, 521 F. Supp.2d 795, 827 (7th Cir. 2007) (quoting *SEC v. Maio*, 51 F.3d 623, 632 (7th Cir. 1995).

Defendants' definition of materiality is also woefully inaccurate. First, as part of the definition of materiality Defendants contend that "the information must be extraordinary in

3

nature." That's not the definition of materiality. Rather, a fact is deemed material if "there is a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the total mix of information made available" concerning the company. *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, (1976).

Defendants' encourage this Court to tick-off many things that under no circumstances can be deemed "material." Such an exercise fundamentally misconstrues the law of materiality. Jurors must consider the significance of the information both in the context the total mix of information available about that company and considering all of the circumstances in which the information was disseminated to the public. "Per se" examples of immaterial information have no place in jury instructions because it urges the jurors to consider the relevant information in some sort of vacuum, bereft of the context in which the information was disclosed.

Defendants ask that the Court direct the jury to "consider whether the information concerned a subject about which there was already speculation in the market." Such a directive is untethered to the well-established precedent concerning materiality – none of which directs a fact-finder to myopically consider materiality in such a manner.

Defendants' further assert that "[i]nformation which is speculative in nature is not material, even if it comes from a company insider, if it is substantially the same as other speculative information already in the market." That is not the law. Rather, the Supreme Court has expressly recognized that the source of the information matters. Information that may have been not material if it was the stuff of rumors in the marketplace may nonetheless be deemed highly material if it originates from an insider. *See Basic Inc. v. Levinson*, 485 U.S. 224, 238 (1988) (quoting *SEC v. Texas Gulf Sulphur Co.*, 401 F.2d 833, 849 (2d Cir. 1968)

4

(holding that the materiality of information with respect to contingent or speculative events "will depend at any given time upon the balancing of both the indicated probability that the event will occur and the anticipated magnitude of the even in light of the totality of the company activity.")

The SEC also takes issue with Defendants' instruction that "[m]ateriality cannot be judged by hindsight." While it is true that Defendants' liability must be based on material non-public information known at the time of the trade, it is well settled that "the materiality of disclosed information may be measured post hoc by looking to the movement, in the period immediately following disclosure, of the price of the firm's stock." *Grimes v. Navigant Consulting, Inc.*, 185 F.Supp.2d 906, 912-13 (N.D. Ill. Feb. 5, 2002).

Many of the terms used in Defendants' instructions are left undefined or do not correspond to a specific proposed instruction. For example, Defendants define the term "improperly obtained" but is not at all clear why this term requires a definition, and which element of insider trading this term corresponds to. The instructions also mention the term "recipient analyst." Specifically, Defendants propose that "[i]n some cases, it may not be clear, either to the corporate insider or to the *recipient analyst*, whether information about a company will be viewed as material, nonpublic information." (Defs.' Proposed Instruction 6.) The instructions provide no definition for recipient analyst. These instructions not only have no basis in the law, but will serve only to confuse and mislead the jury, and therefore must be omitted.

Lastly, the SEC objects to the defendants' proposed summary of their case insofar as it is not couched as allegations that the defendants are making, but instead direct the Court to recite their arguments as if they are fact. The SEC's statement of the case, carefully

5

qualifies each and every sentence to make clear that the Court is stating the SEC's allegations.

## CONCLUSION

For these reasons, plaintiff United States Securities and Exchange Commission respectfully requests that the Court adopt the SEC's proposed jury instructions.

Dated: December 16, 2013          Respectfully submitted,

<u>/s/ Jedediah B. Forkner</u>
Timothy S. Leiman
Jonathan S. Polish
Jedidiah Forkner
U.S. Securities & Exchange Commission
175 West Jackson Blvd., Suite 900
Chicago, IL 60604
Phone: (312) 353-5213